901 So.2d 559 (2005)
John LAM, A Minor, Through Thom LAM In His Capacity as the Administrator of the Estate of His Minor Child, John Lam
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Thomas Perino, Mildred Perino Individually and as the Administrator of the Estate of Thomas Perino, Salvador Perino Individually and as the Administrator of the Estate of Thomas Perino, et al.
Thom Lam and Hue Nguyen
v.
State Farm Mutual Automobile Insurance Company, Thomas Perino, Mildred Perino, Individually and as the Administrator of the Estate of Thomas Perino, Salvador Perino, Individually and as the Administrator of the Estate of Thomas Perino, et al.
Billy Kim Nguyen and Thanh T. Vu, Individually and as Natural Tutrix of Anna K. Vu, A Minor
v.
State Farm Mutual Automobile Insurance Company, Thomas Perino, Mildred Perino, Salvador Perino, Individually and as the Administrator of the Estate of Thomas Perino, et al.
John Lam, Through Tom Lam In His Capacity as the Administrator of the Estate of His Minor Child, John Lam
v.
State Farm Mutual Automobile Insurance Company, Thomas Perino, Mildred Perino, Individually and as the Administrator of the Estate of Thomas Perino, Salvador Perino, Individually and as the Administrator of the Estate of Thomas Perino, et al.
Nos. 2003-CA-0180 to 2003-CA-0182 and 2003-CA-0824.
Court of Appeal of Louisiana, Fourth Circuit.
April 1, 2005.
*562 Edward F. Downing III, John W. Houghtaling II, Gauthier, Downing, LaBarre, Dean & Sulzer, Metairie, LA, and George H. Troxell, New Orleans, LA, for John Lam, A Minor, Through Thom Lam, In His Capacity as the Administrator of the Estate of His Minor Child.
Gerald E. Meunier, Gainsburgh, Benjamin, David, Meunier & Warshauer, New Orleans, LA, for Thom Lam and Hue Nguyen Lam.
Antonio M. Clayton, Clayton Law Firm, Port Allen, LA, and Anthony D'Alto II, John B. Peuler, Gregory L. Ernst, Peuler & Ernst, New Orleans, LA, for Lakeside Imports, Inc. d/b/a Lakeside Toyota and Mid-Continent Insurance Company.
E. Wade Shows, Sheri M. Morris, Shows, Cali & Berthelot, L.L.P., Baton Rouge, LA, for Lakeside Imports, Incl., d/b/a Lakeside Toyota.
*563 Anthony J. Clesi, Jr., Sheryl M. Howard, Derek M. Mercadal, H. James Parker, Evans & Clesi, PLC, New Orleans, LA, for Billy Nguyen.
(Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO JR., Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.

FACTS
On January 31, 1995, Billy Nguyen was operating a 1989 Toyota Supra owned by his brother Dinh Nguyen, traveling east on the elevated Westbank Expressway in Jefferson Parish. Hue and Thom Lam ("Lams") were following Nguyen in their vehicle. Hue Lam was driving the following vehicle with her husband Thom as a passenger. Thom was holding their two-year old son, John, on his lap. Nguyen's vehicle experienced a sudden loss of power and began to slow down causing Hue Lam to slow down. Shortly thereafter, the Lams' vehicle was rear-ended by a pick up truck driven by Tommy Perino, causing the Lams' vehicle to rear-end Nguyen's vehicle. As a result of these impacts, the Lams' son, John, sustained severe injuries, which rendered him a paraplegic.

PROCEDURAL HISTORY
The Lams filed suit individually and on behalf of their minor son John Lam against Salvador Perino, individually and on behalf of his minor son Tommy Perino,[1] Billy Nguyen, Dinh Nguyen and State Farm Mutual Automobile Insurance. The Petition for Damages filed on March 21, 1995, alleged solidary liability among the defendants for their negligence and fault. After an inspection of the Nguyen vehicle and maintenance records, Plaintiffs filed a Supplemental and Amended Petition in December 1996, alleging Lakeside Imports, Inc. d/b/a Lakeside Toyota ("Lakeside") was negligent in its repair of the Nguyen vehicle, which caused or contributed to the loss of engine power experienced just before the collision.
A jury trial was scheduled for November 28, 2001, and jury selection began on December 3, 2001. Eight jurors were selected on that day and the court postponed the selection of the remaining jurors until December 10, 2001. Prior to jury selection resuming on December 10, 2001, Lakeside's counsel contacted the trial judge, ex parte, regarding a message left on his cell phone by one of plaintiffs' counsel. The ex parte discussion led to the trial court judge recusing herself and dismissing the eight jurors that had been seated. Thereafter, the trial judge conducted a meeting with all counsel and rescinded the recusal order resetting trial for January 2, 2002.
At the conclusion of the 25 day trial, the jury returned a verdict assigning fault as follows: (1) Lakeside 0%; (2) Tommy Perino 25%; (3) Hue Nguyen Lam 17.5%; (4) Billy Nguyen 40%; and (5) Thom Lam 17.5%. Monetary damages were awarded in the amount of $7,103,235.00. The court adopted the jury's verdict as the final judgment. It is that judgment that gives rise to this appeal.

APPELLANTS' ASSIGNMENTS OF ERROR
These consolidated appeals address several assignments of error asserted by appellants, Hue and Thom Lam, individually and on behalf of their minor son, John, (collectively "Plaintiffs") and by Billy Nguyen ("Nguyen"). The following assignments of error have been asserted: (1) the trial court erred in denying a Daubert *564 hearing; (2) the trial court erred in allowing Lakeside's expert Glenn Cupit, to testify about, and perform experiments before the jury using a model which did not fairly represent the operation of the 1989 Toyota Supra involved in the accident; (3) the trial court erred and created confusion by instructing the jury that fault could be placed on Thom Lam, the guest passenger, for failing to use reasonable care to supervise and protect his child; (4) the jury erred in assigning 17.5% fault to Thom Lam; (5) the trial court erred in entering a judgment on the jury finding of fault on the part of Thom Lam, the passenger-father; (6) the trial court erred in entering a judgment on the jury's finding and dismissing Lakeside with prejudice, at plaintiffs' cost; (7) the trial court erred in denying John Lam's Motion for JNOV; (8) it was manifest error for the jury to find 0% negligence on the part of Lakeside; (9) the jury erred in assigning 17.5% of fault to Hue Lam; (10) the jury erred in finding Nguyen 40% negligent; (11) the jury erred in finding Perino 25% negligent; (12) the trial court erred in taxing costs of Dr. Matthews to plaintiffs; (13) the trial court erred in taxing Glenn Cupit's fees to the plaintiffs; and, (14) the trial court erred in denying plaintiff's Motion to Assess Costs of Mistrial against Lakeside.
The Plaintiffs assert assignments of error 1 through 7 and 12 through 14. Nguyen's appeal also raises assignments of error 1 through 7, and individually asserts assignments of error 8 through 11.

STANDARD OF REVIEW
Generally, a court of appeal may not set aside a trial court's or a jury's findings of fact, unless they are manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). However, the Louisiana Supreme Court has consistently held that where one or more trial court legal error impedes the fact-finding process, the manifest error standard is no longer applicable, and, whenever possible, the appellate court should make its own independent de novo review of the record and render a judgment on the merits. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 747, revd in part, on other grounds, 96-3028 (La.7/1/97), 696 So.2d 569, reh'g denied, 96-3028 (La.9/19/97), 698 So.2d 1388; Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); See also, McLean v. Hunter, 495 So.2d 1298 (La.1986).
A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. See Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Id.
For reasons thoroughly discussed in the evaluation of the assignments of error, this court finds that legal errors occurred at the trial of this matter that materially affected the jury's verdict and were therefore, prejudicial. As such, for assignments relating to those legal errors this Court will conduct a de novo review of the record and render an independent judgment on the merits consistent with the law, facts and evidence of this case. All other assignments of error will be decided applying the manifestly erroneous or clearly wrong standard.

ASSIGNMENTS OF ERROR 1 AND 2 AND 8
The trial court was notified near the end of the plaintiffs' case that Lakeside's expert, Glenn Cupit, a mechanical engineer, had recently constructed a model engine intended to replicate the engine of the 1989 Toyota Supra operated by Nguyen *565 on the day of the accident.[2] The model was to be presented to the jury to conduct demonstrations and experiments.
Counsel for plaintiffs made an oral motion in limine seeking to exclude the model on the grounds that it did not accurately replicate the circumstances under which spark plugs will fire or "misfire" in a Toyota Supra engine similar to the one made subject of this action. The plaintiffs presented an affidavit prepared by their mechanical expert Charlie Miller. Miller listed 20 differences between the subject engine and Cupit's model. The trial court denied plaintiffs' motion to exclude the model and testimony and further declined to conduct a Daubert hearing. Miller's affidavit was proffered and is part of the record.
Cupit was allowed to use his model to demonstrate to the jury his theories on how the Supra engine performed on the evening of the accident. Cupit's experiments and testimony were used to contradict the plaintiffs' experts' theories regarding the Supra's engine's performance.
In Doe v. Archdiocese of New Orleans, XXXX-XXXX (La.App. 4 Cir. 5/8/02), 823 So.2d 360, this court discussed the trial judge's discretion in determining whether an expert should be allowed to testify as an expert. In Doe we reiterated this court's long held position that absent clear error, the trial court's decision regarding the testimony of an expert will not be reversed on appeal. Id. at p. 3, 363 citing Ballam v. Seibels Bruce Ins. Co., 97-1444, p. 4 (La.App. 4 Cir. 4/1/98), 712 So.2d 543, 546, citing Mistich v. Volkswagon of Germany, Inc. 95-0939 (La.1/29/96), 666 So.2d 1073; also see, Williamson v. Haynes Best Western of Alexandria, 95-1725 (La.App. 4 Cir. 1/29/97), 688 So.2d 1201, 1241.
The potential to taint the jury and have a prejudicial effect on the outcome of a trial necessitates the trial court exercise its "gatekeeper" obligation. Here the plaintiffs had an affidavit that raised numerous issues regarding the model and Cupit's methodology. In denying plaintiffs' counsel's request for a Daubert hearing the trial court reasoned that the model, experiments and testimony could be challenged on cross-examination. Unfortunately, the damage or prejudice would have occurred by that point. Miller's affidavit undoubtedly raised enough issues regarding the model and Cupit's methodology to warrant the trial court to conduct a hearing on admissibility. Allowing the jury to see and hear such evidence had a prejudicial effect on the plaintiffs' case and ultimately the jury's verdict. Therefore, this court finds that the trial court clearly abused its discretion by not conducting a Daubert hearing to determine the admissibility of Cupit's testimony regarding the model and the use of the model. As such it is this court's responsibility to determine from the record whether the model and testimony were admissible pursuant to Daubert.
The non-exclusive factors that should be considered by district courts when determining the admissibility of expert testimony are: (1) the "testablility" of the scientific theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the methodology is generally accepted in the scientific community. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-594, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Cheairs v. DOTD, *566 XXXX-XXXX, p. 5 (La.12/3/03), 843 So.2d 383; Davis v. American Home Products, XXXX-XXXX, P. 7 (La.App. 4 Cir. 3/26/04), 844 So.2d 242, 250; Doe v. Archdiocese of New Orleans, XXXX-XXXX, p. 4 (La.App. 4 Cir. 5/8/02), 823 So.2d 360, 363; Clement v. Griffin, 634 So.2d 412, 427 (La.App. 4 Cir.), writ denied, 637 So.2d 478, 479 (1994).
Cupit admitted that he did not review or present any peer review articles on the use of nitrogen gas to replicate the pressures of an internal combustion engine. Although Cupit felt his model gave the same results as a real car, he did not know the error rate and did not keep track of any test results. He presented no evidence with comparative results from a Toyota Supra turbo engine versus his model. He claimed that readings he received were similar to those he obtained in the inspection of the accident vehicle, but he did not record those and just seemed to remember what they were and "felt" that his model had similar readings. He admitted that the pressure he exposed the spark plug to in the model was lower than that of the Supra's engine. His model also failed to produce the turbulence normally produced by the mixture of air volume and gasoline in a fuel injection engine. In sum, Cupit acknowledged that his model was not an exact replica, but rather "in the ball park."
The model was presented to the jury as a demonstration of the Supra's engine's performance at the time of the accident. Though a recreation need not be exact in every detail, the main elements of the test must be identical or very similar to the original set of circumstances for it to have probative value. State v. Johnson, 34,902 (La.App. 2nd Cir.9/26/01); 796 So.2d 201, 209. Under no circumstances should an exhibit be designed to mislead the jury.
The trial court clearly committed legal error by not conducting a Daubert hearing. Therefore, this court must conduct a de novo review of the record to determine if the model met the standards set forth in Daubert. After reviewing the testimony of Cupit in conjunction with the proffered affidavit of Miller, it is clear that the model does not meet the standards of Daubert. We therefore reject Lakeside's model under Daubert. Thus, the model, experiments and related testimony were inadmissible and had the trial court properly exercised its "gatekeeping" function the jury would not have heard about or witnessed the experiments performed on the model. Consequently, this court must take into account the weight of Cupit's testimony regarding the experiments' results when considering the correctness of the jury verdict.
When the fact finders decision on the apportionment of fault has been tainted by erroneously admitted prejudicial evidence, de novo review is appropriate. Clement v. Frey, 95-1119 (La.1/16/96); 666 So.2d 607, 611 (Lemmon, J., concurring) citing, Lasha v. Olin Corp., 625 So.2d 1002 (La.1993); McLean v. Hunter, 495 So.2d 1298 (La.1986); Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). We have already concluded that the jury was allowed to hear inadmissible evidence. Lakesides defense was based on that inadmissible evidence. We have also determined that the evidence had a prejudicial affect on the jury. Therefore, a de novo review of the record is warranted for this court to determine what if any fault should be assigned to Lakeside.
A plaintiff must prove five separate elements, in order for liability to be established: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant *567 breached said duty; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and, (5) actual damages. Pepper v. Triplet, XXXX-XXXX (La.1/21/04), 864 So.2d 181 citing, Davis v. Witt, XXXX-XXXX (La.7/2/03), 851 So.2d 1119.
Lakeside's maintenance records indicate they serviced the Nguyen vehicle numerous times prior to the January 1995 accident. The last repairs performed prior to the accident were in January 1994. At that time Lakeside mechanic, Barry Swanson ("Swanson") cleaned the cold start injector, inspected for oil and fluid leaks, and replaced the valve cover gaskets. During the repairs, Swanson stated that he noticed the spark plug wires were worn and saw oil in the valley where spark plugs 5 and 6 sit. Swanson claimed that he notified his supervisor, Karl Meredith ("Meredith"), to contact Nguyen and recommend that he have the spark plug wires changed and the oil cleaned out of the valley. Also, Meredith testified that he could not recall informing Nguyen about those specific repairs and the ramifications of not having the work completed. Swanson testified that he wrote those recommendations on the back of the work order.[3] Swanson further claimed that the customer did not approve the additional services, so he did not perform those repairs.
Nguyen relied heavily upon Lakeside's knowledge and expertise, which is evident by the number of times he allowed them to service the Toyota Supra. Plaintiffs' and Lakeside's experts all agreed that Swanson should have cleaned the oil from the valley when replacing the valve cover gasket. Lakeside clearly had a duty to Nguyen. Whether that duty was to repair the vehicle properly or to fully disclose the consequences of declining the repairs, the duty was breached.
Continuing the duty/risk analysis, we must determine if Lakeside's substandard conduct was a cause-in-fact of the accident made subject of this litigation. This aspect of the duty/risk analysis generally involves the "but for" test, which determines whether the accident would have occurred but for Lakeside's substandard conduct. But, when there is more than one cause of an accident the test becomes whether the conduct in question was a substantial factor in causing the accident. Bonin v. Ferrellgas, Inc., 2003-C-3024, p. 5 (La.7/2/04), 877 So.2d 89, 94.
Plaintiffs' counsel presented several experts in mechanics to testify regarding the effect a build up of oil in the valley would have on the performance of a Toyota Supra engine, like the one in the Nguyen vehicle. The witness used to refute these experts' testimony was Cupit. This court has already made the determination that the trial court committed legal error in admitting the Cupit model and testimony regarding the experiments and therefore, will exclude that evidence when evaluating whether Lakeside's negligence was a cause in fact of the plaintiffs' injuries and, if so, to what degree.
Swanson acknowledged the danger and risk associated with allowing the spark plug boots to remain exposed to the oil. He testified the oil would get between the spark plug and spark plug wire causing the plug wire to break down, creating a high resistance situation and ultimately loss of power in one or more cylinders. Plaintiff's expert, Miller, also demonstrated *568 the affect the oil build up would have on the performance of the spark plugs, explaining that the result would be a sudden loss of power such as the one exhibited by the Supra on the night of the accident. The sudden loss of power presented a dangerous situation. Without such an abrupt slowing of vehicles at a time of high traffic, there would have been no accident. Trooper Stewart's report attributed the accident to Nguyen's vehicle malfunctioning. The evidence provided at trial was more than sufficient to prove that the negligent repair was a substantial factor in bringing about the accident.
This court is also required to conclude whether the risk and harm encountered by the plaintiffs falls within the scope of the protection afforded by the duty breached. Again, we need not look any further than Swanson's testimony. He indicated that he knew the oil in the valley should be cleaned out and the spark plug wires changed to avoid future engine problems. He claimed that he relayed this information to his supervisor to pass on to the customer. In light of the evidence presented at trial there is no proof this information was communicated to Nguyen. Swanson said he did not receive approval for the necessary repairs from his supervisor and, therefore, they were not done, even though he knew this could cause the engine to malfunction.
In assessing the nature of the conduct of the parties, for the purpose of apportioning fault, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacity of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require an actor to proceed in haste without proper thought. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985).
First, Swanson was absolutely aware of the danger and risk associated with allowing the spark plug boots to remain exposed to the oil. He testified the oil would get between the spark plug and spark plug wire causing the plug wire to break down, creating a high resistance situation and ultimately loss of power in one or more cylinders. Nevertheless, he failed to perform the work. He stated he made his recommendation and that was all he could do. If the customer declined the work he would not get paid and he did not want to work for free. Even if this court would conclude that informing the customer of the recommendation for the work was sufficient to fulfill any duty Lakeside had, there was not sufficient evidence to support that the recommendation and risks related were conveyed to Nguyen and declined. The writing, allegedly on the back of the original work order, was never produced because it could not be found. The copy of the work order only depicted the front of the order. Meredith testified he could not remember whether he notified Nguyen of those specific recommendations and the risks involved in not having the work done.
Throughout Swanson's testimony it was established that the controlling factor on whether work would be done was based on what they can bill to the customer. Swanson claimed that to do the entire cam cover gasket replacement including the proper removal of the oil would have taken approximately three hours, while the Toyota Manual calls for 1.2 hours of labor for that job. Yet, Nguyen was billed for four hours of labor and the oil was not properly cleaned out. Finally, there has been no legitimate argument made asserting extenuating *569 circumstances surrounding Swanson's failure to properly remove the oil from the valley.
This court finds that the negligent repairs on the Nguyen vehicle, by Lakeside, one year and approximately 6,000 miles before the accident, was a contributing factor in causing this accident. Yet, other actors' negligence played larger rolls in the sequence of events. Accordingly, Lakeside is assessed 17.5% fault.

ASSIGNMENT OF ERROR 3, 4 AND 5
These assignments raise issues with the following jury charges:
As a general rule, there is no duty upon a guest passenger to a person outside of the vehicle to exercise any control or give any warning to the driver of the vehicle. However, liability upon a guest passenger may be imposed when there is a special relationship between the driver and the guest passenger, there must be a joint interest of the driver and the passenger or an equal right in the passenger to control the driver's operation of the vehicle, there must be a joint interest in the object and purpose of the mission and an equal right expressed or implied on the part of each of the parties to direct or control the conduct of the other in the operation of the vehicle; and
Parents have a general duty continuing in nature to use reasonable care and to supervise and protect their children.
Prior to trial, plaintiffs' counsel filed a Motion in Limine to prohibit defendants from arguing fault associated with failure to use a child passenger restraint system. They relied on the plain language of LSA-R.S. 32:295(F), which states "[i]n no event shall failure to wear a child passenger safety seat system be considered as comparative negligence, nor shall such failure be admissible as evidence in the trial of any civil action with regard to negligence, nor shall such failure be considered a moving violation." The trial court ruled in favor of the plaintiffs. Lakeside's writ applications to this court and the Louisiana Supreme Court were denied. The language from LSA-R.S. 32:295(F) was incorporated into the jury's instructions.
Lakeside, unable to argue that the Lams were at fault for failing to restrain John in a safety seat, requested the court instruct the jury that, "parents have a general duty, continuing in nature, to use reasonable care to supervise and protect their children from injury." The trial court incorporated the charge into the jury's instructions. The trial court gave the jury the instruction on LSA-R.S. 32:295(F) and later instructed the jury on the general duty of a parent. We find that the latter instruction undermines the law as set forth in 32:295(F) and led the jury to erroneously apportion fault to Thom Lam.
The parents' duty to take reasonable steps to protect their child does not encompass the duty to restrain the minor child with a seat belt device. Hammer v. City of Lafayette, 502 So.2d 301, 304 (La.App. 3d Cir.1987). Lakeside's counsel, in closing argument admitted that he was prohibited from raising the seatbelt argument. So alternatively, he argued that the parents had a duty to protect their child and they failed. This argument was an obvious attempt to circumvent prior rulings prohibiting the seat belt argument.
In addition, Louisiana courts have consistently found that a driver's negligence is not imputed to a guest passenger. This jurisprudential rule recognizes the fact that an automobile passenger is generally incapable of influencing the driver's behavior: "it is unrealistic to hold ... that the occupant of a motor vehicle has factually any control or right of control over the driving of the operator." Adams v. Security *570 Insurance Company of Hartford, 543 So.2d 480, 485 (La.1989).
A jury instruction must reflect the applicable law, but not confuse the jury. Williams v. Golden, 95-2712, p. 2-3 (La.App. 4th Cir.7/23/97), 699 So.2d 102, 105. The question is whether the jury was misled to such an extent that it was not able to do justice. Id. We find that the trial court's use of the charge, imputing fault to a guest passenger, did not accurately reflect the applicable law based on the pleadings and facts of this case. Therefore, the jury applied the incorrect law in determining fault against Thom Lam. Thus, allowing the jury charge was legal error on the part of the trial court. In light of the legal error, it is this court's duty to conduct a de novo review of the facts from the record. Upon that review we conclude that the Lams are husband and wife. There was no joint venture or any evidence to suggest that Thom had direct control over his wife's operation of the vehicle. Thus, the jury's finding of fault imputed to Thom Lam is hereby reversed.

ASSIGNMENT OF ERROR 6 AND 7
The plaintiffs and Nguyen failed to brief assignment of error number 7 regarding the trial court's denial of the JNOV, as well as, the portion of assignment number 6 referring to plaintiffs' costs. In accordance with the Louisiana Uniform Rules of CourtCourts of Appeal 2-12.4[4], this court considers those issues to be abandoned by the plaintiffs and Nguyen for failure to brief.

ASSIGNMENT OF ERROR 9
The jury found Hue Lam, the driver of the vehicle following Nguyen to be 17.5% at fault. Evidence presented at trial through Mrs. Lam's testimony and that of accident reconstructionists indicated that Hue Lam was following Nguyen closely, which is why the impact between the Lam and Nguyen vehicles was so severe. Mrs. Lam testified that she was not someone who drove regularly and rarely ever during evening traffic. She further acknowledged that even when Nguyen's vehicle began to lose speed she made no attempt to go around the Nguyen vehicle or to take notice of surrounding vehicles by looking in her rearview or side mirrors. Trooper Stewart testified that Mrs. Lam informed him that her reason for following Nguyen was because he was having problems with his vehicle. However, Mrs. Lam's testimony indicated that because she did not know where she was going she just took Nguyen's lead rather than making independent decisions on how she was going to operate her vehicle.
As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. Clement v. Frey, 95-1119 (La.1/16/96); 666 So.2d 607, 609-610. An appellate court should only disturb the trier of fact's allocation of fault when it is clearly wrong or manifestly erroneous. Id. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Rosell, supra 549 So.2d at 844, citing Watson v. State Farm & Casualty Ins. Co., 469 So.2d 967 (La.1985); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). This court cannot find that the jury was clearly wrong or manifestly erroneous in placing some fault on Hue Lam in the operation of her vehicle. Thus, the jury's *571 assessment of 17.5% fault on the part of Hue Lam is affirmed.

ASSIGNMENT OF ERROR 10
The jury found Billy Nguyen to be 40% at fault. In order to come to such a conclusion, the jury undoubtedly questioned Nguyen's credibility, affording it little if any credence. To begin with, Nguyen gave inconsistent answers to questions regarding Lakeside's communication with him regarding additional repairs. Nguyen claimed he always gave the okay on whatever Lakeside recommended but could not explain why there were notes on the work order advising the technician that the client had declined a number of additional other recommended repairs.
Nguyen vehemently denied having problems with his vehicle prior to the night of the accident. He also denied speaking with Trooper Derrick Stewart, the investigating officer, on the night of the accident, and claimed he was not cited for the accident. However, Trooper Stewart testified that he spoke with Nguyen at the hospital. During their conversation Nguyen stated he lost power in his vehicle causing a decrease in speed. He further informed Trooper Stewart that he experienced similar problems a week earlier, indicating he had knowledge of the problem. Concluding that a contributing factor in the accident was engine malfunction, the trooper issued Nguyen a citation for failing to maintain his vehicle.
When the jury's conclusions are based on determinations regarding credibility of a witness, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, 469 So.2d at 844. Therefore, on review, the issue to be resolved is not whether the trier of fact was wrong but whether the jury's conclusions were reasonable. Stobart, supra at 883; Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305.
Again, the trier of fact is vested with much discretion in its allocation of fault. Clement, supra. In light of the evidence presented to the jury this court cannot find that the jury's findings regarding Nguyen's fault was unreasonable, let alone clearly wrong or manifestly erroneous. Consequently, this court must affirm the jury's finding, even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently. Stobart v. State, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). Accordingly, this court declines to disturb the jury's finding that Nguyen was 40% at fault for the subject accident.

ASSIGNMENT OF ERROR 11
Tommy Perino, the operator of the vehicle which rear-ended the Lams' vehicle was assessed 25% fault by the jury. Perino testified that he was traveling approximately 55 to 60 miles per hour in the center lane of the Westbank Expressway. Directly in front of Perino was a truck that traveled from the center lane to the left lane. Perino followed, even though he claimed he could not see what was in front of the truck as he followed. Just after moving to the left lane, the truck which Perino was following, quickly moved back to the center lane. Perino stated that once the truck was no longer in front of him, he was immediately confronted with the Lams' vehicle, which appeared to him to be stopped. Without time to brake, the collision occurred. Trooper Stewart determined that the contributing factor in causing the collision was Nguyen's *572 engine failure. Perino was not issued a citation.
Applying the same standard to Perino that we applied to Hue Lam and Billy Nguyen, this court does not find the jury's assessment of 25% fault to Perino unreasonable based on the evidence. Thus, the jury's determination of fault for Perino is hereby affirmed.

ASSIGNMENTS OF ERROR 12 AND 13
These assignments relate to expenses incurred by Lakeside and taxed to the plaintiffs. In accordance with this court's opinion casting judgment against Lakeside for 17.5% fault, taxing plaintiffs with Lakeside's costs is no longer equitable. Therefore, the judgment assessing Lakeside's expenses associated with Dr. Matthews and Glenn Cupit to the plaintiffs is hereby reversed.

ASSIGNMENT OF ERROR 14
In their final assignment of error the plaintiffs contend that the trial court erred by not assessing costs associated with the mistrial against Lakeside. This court recognizes that the mistrial was prompted by an ex-parte communication between the trial court judge and Lakeside's counsel, causing the trial court judge to question her ability to be impartial in presiding over the case. However, the event that gave rise to the ex-parte communication was a phone message left for Lakeside's counsel by plaintiffs' former co-counsel. Based on the content of the phone message, Lakeside's counsel found an ex-parte conference with the trial judge was appropriate. Notwithstanding the appropriateness of Lakeside's decision, it can hardly be determined that Lakeside's counsel orchestrated the mistrial. Lakeside's counsel had no control over the actions of plaintiffs' former co-counsel. Therefore, we find no abuse of discretion in the trial court's post trial judgment denying plaintiffs' request to assess the costs of the mistrial against Lakeside.

DECREE
For the reasons provided, the jury's verdict is hereby reversed as to the assignments of fault to Thom Lam and Lakeside. This court finds that the jury was charged with the incorrect law regarding Thom Lam's fault for the accident and/or resulting injuries. Likewise the jury was presented with inadmissible evidence on the issue of Lakeside's fault. For the reasons thoroughly discussed hereinabove, Thom Lam is found to be 0% at fault and Lakeside is hereby assessed with 17.5% fault for the accident and resulting injuries. Further, the assessment of Lakeside's costs to plaintiffs is also reversed. The judgment is hereby affirmed in all other respects.
REVERSED IN PART; AND AFFIRMED IN PART.
CANNIZZARO, J. dissents in part and concurs in part with reasons.
KIRBY, J. dissents in part and concurs in part for the reasons assigned by CANNIZZARO, J.
CANNIZZARO, J. dissenting in part and concurring in part with reasons.

Liability of Lakeside Toyota
I respectfully dissent from the majority's finding of fault on the part of Lakeside Imports, Inc. d/b/a Lakeside Toyota ("Lakeside"). The majority held that Lakeside's failure to advise Mr. Nguyen to make certain repairs on the 1989 Toyota Supra was a cause of the accident. I do not find there is any way that liability for an accident that occurred a year after Lakeside serviced the car can be determined to have been the fault of Lakeside. At issue is whether engine failure that occurred in the car a year later was a *573 result of Lakeside's failure to advise Mr. Nguyen that oil found in the area of the sparkplugs in the car's engine needed to be cleaned.
Not only did a year elapse during which any number of intervening factors could have occurred, but the car was also driven an additional 6,000 miles before the accident occurred. The relationship between any failure to clean the oil from the area of the sparkplugs is so attenuated that causation simply cannot be established. If the car had been properly maintained, the oil would have been changed at least once during the year after Lakeside noted the problem with the engine. If the oil had been changed, then the problem should have been noted and corrected at that time. If the oil had not been changed, the failure to maintain the car superceded any act or omission on the part of Lakeside.
Another reason that I would not find liability on the part of Lakeside is that I do not think that this Court should second guess the jury's determination of credibility. As the majority states "the jury undoubtedly questioned Nguyen's credibility, affording it little if any credence." The majority states:
To begin with, Nguyen gave inconsistent answers to questions regarding Lakeside's communication with him regarding additional repairs. Nguyen claimed he always gave the okay on whatever Lakeside recommended but could not explain why there were notes on the work order advising the technician that the client had declined a number of additional other recommended repairs.
Nguyen vehemently denied having problems with his vehicle prior to the night of the accident. He also denied speaking with Trooper Derrick Stewart, the investigating officer, on the night of the accident, and claimed he was not cited for the accident. However, Trooper Stewart testified that he spoke with Nguyen at the hospital. During their conversation Nguyen stated he lost power in his vehicle causing a decrease in speed. He further informed Trooper Stewart that he experienced similar problems a week earlier, indicating he had knowledge of the problem. Concluding that a contributing factor in the accident was engine malfunction, the trooper issued Nguyen a citation for failing to maintain his vehicle.
Obviously, there was ample reason for the jury to disregard Mr. Nguyen's testimony. They saw Mr. Nguyen testify, observed his demeanor, and compared his demeanor and testimony with the demeanor and testimony of Lakeside's witnesses. Then they determined that his testimony was not to be believed. There was no manifest error in the jury's finding that Mr. Nguyen, not Lakeside, was at fault for any unmade repairs. I find that the jury's factfinding regarding the allocation of no fault to Lakeside should be upheld. Either Lakeside's testimony regarding Mr. Nguyen's refusal to authorize the clean-up of the oil is accurate, or Mr. Nguyen's testimony on this issue is accurate. If Mr. Nguyen were not a credible witness, as both the jury and the majority found, it is completely incongruous to find Lakeside at fault. Either Lakeside notified Mr. Nguyen of the problem and he did not authorize the repairs, as Lakeside contended, or Lakeside did not notify him, as Mr. Nguyen testified. If Mr. Nguyen is not credible, he should not be believed on the question of whether Lakeside informed him of the need for repairs.

Daubert Hearing
I find that it was error for the majority to find that a Daubert hearing was required for the simple demonstration of how spark plugs perform. In Cheairs v. *574 State Through the Department of Transportation and Development, XXXX-XXXX, p. 2 (La. 12/3/03), 861 So.2d 536, 538, the Louisiana Supreme Court found that "the only issue directly addressed by Daubert is the reliability of an expert's methodology." The demonstration presented at trial was a showing that in the presence of oil and an inoperative sparkplug, intact sparkplugs still fired. There was no methodology for which reliability needed to be determined. Mr. Cubit was not testifying about the results of an experiment using a particular methodology. He was presenting a simple demonstration. The plaintiffs had the opportunity to cross examine Mr. Cubit regarding the validity of the demonstration. The decision to let Mr. Cubit testify as an expert was within the discretion of the trial court judge, and I do not find that she abused her discretion.

Reallocation of Liability Attributed to Mr. Lam
I agree with the majority's reversal of the finding of fault on the part of Mr. Lam. Rather than reallocate to Lakeside the percentage of liability originally attributed to Mr. Lam, I would attribute that percentage to Thomas Perino, who I think was primarily responsible for the tragic accident that occurred in this case. Had Mr. Perino not been speeding and had he been paying proper attention to his driving, this accident might well have been avoided. Mr. Perino, not Lakeside, should bear the responsibility improperly imposed on Lakeside. As sympathetic as I am to the plaintiffs' situation, I do not think that liability for an accident should be allocated based on the depth of a party's pockets. It should be allocated based on the facts of the case that are proven at trial.
NOTES
[1] Tommy Perino was fifteen years old at the time of the accident.
[2] The plaintiffs, through stipulation, waived any objection they may have had to the timeliness of the model.
[3] Lakeside was unable to produce the original work order showing repair recommendations written on the back.
[4] Rule 2-12.4 states in pertinent part: ... All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed ....